Good morning. Judge Callahan is with us by camera. You may not be able to see, but good morning, Judge Callahan. So this is a complicated enough case. We want to give you a chance to give your argument. So go ahead. Good morning. May it please the Court. Cecilia Wong of the ACLU Immigrants' Rights Project for Mr. Tijani. Before you plunge into it, I just want to clarify something. There are two grounds on which the government says you can't go further. One, if they show it's an aggregated felony. Two, if they show there are two crimes of mild servitude. Is that correct? That is correct, Judge Noonan. Okay. I just want to clarify in the interest of the Chamber's discussion. Yes. There are two charged grounds of removability, and I'd like to start with the one issue that would dispose of both of those grounds and of the entire case, and that's whether the statute of conviction here, the false financial statement penalty in California Penal Code Section 532A, is a fraud offense. It clearly is not, as Judge Tashima noted and as the BIA has held with respect to a virtually identical Connecticut statute. And the reason for that is that 532A does not include anywhere an element of fraud or intent to defraud, which is required for this court to find that the offense is either a CIMT or an aggravated felony. The BIA in matter of Kinney looked at two parallel statutes under Connecticut law that are virtually identical to California law. First, they looked at the false financial statement offense, which is at issue here, the statute of conviction, and noted that it does not include an element of intent to defraud. In contrast, there is a parallel provision under California law, as under Connecticut law, that actually is largely overlapping. It penalizes making a false misrepresentation to obtain property or goods with the intent to defraud. In this case, Your Honor, the California prosecutor, if it had proof of intent to defraud, could have charged Mr. Tijani under the other statute, the false pretenses statute, which is confusingly known as California Penal Code Section 532, as opposed to 532A. They chose not to do that. There was no proof at Mr. Tijani's criminal trial that he intended to defraud anyone, and the jury did not so find. I'm sorry. You're relying primarily on a BIA case, right? Primarily, Your Honor. I think matter of Kinney is directly on the case. It's a matter of Kinney, right? Yes, Your Honor. Are we bound by that case? Well, Your Honor, I think that the Court does owe Chevron deference to the decision in matter of Kinney. In your view, it's entitled to Chevron deference? The government says it's an old case, so we should, in effect, sort of ignore it. As far as I know, there's no exception to Chevron for old cases. The BIA has never overruled Kinney. No court has held to the contrary of Kinney, and I think the Court should follow it and accord it Chevron deference. I want to pursue one other claim of thought. The statute on removal for an aggravated felony defines it as involving fraud or deceit. Now, why can't we focus on deceit as distinct from fraud? Your Honor, interestingly, this Court, the Ninth Circuit, has never unlinked those two terms in subsection M. It's never looked at deceit separately from fraud. Well, why can't it? The surplus of the term must have meant something. Well, Judge, I'll address that. But in any event, I want to point out that. No, please answer that question. Okay, I'll answer that question. Why can't we look at deceit and say it's separate, a separate thing from fraud? There is good evidence that Congress actually intended those two terms to go together and they're actually redundant. Why? I mean, that's amazing. As a matter of statutory construction, it makes no sense. You've got to go on the legislative history? No, I'm not, Your Honor. I'm going to look at Ninth Circuit precedent. Well, what shows that these are the same words used twice? What shows it is that this Court has looked at those two terms, fraud and deceit, together in different contexts and has reached different conclusions. For example, in the context of construing the Federal wire fraud statute, in U.S. v. Stapleton, the Court said that intent to defraud is equivalent to intent to deceive, that in order to obtain a conviction for fraud under the Federal criminal code, either of those two things is sufficient and they're actually equivalent. Does it say intent to deceive is the same as intent to defraud? It does, Your Honor. Does intent to deceive require intent to get property? In this context, Your Honor, I would contend that intent to deceive requires materiality at the least and does require in this context an intent to get property. In any event — Well, now you're reading something into the words, anyway. Well, Your Honor, I want to go back to your question, and that's what evidence is there that Congress didn't mean anything extra by those words or deceit. And I think, as I said, there are cases construing fraud in the Federal criminal code that make those two terms equivalent. Well, fraud always includes deceit. And there are other — Right. There are other cases. Deceit always includes fraud? Well, not necessarily, Judge. Well, not necessarily. You make the whole ballgame. Right. Well, there are two ways this Court has talked about fraud or deceit together in that way. One is the two cases I've talked about already, Vincent and Stapleton. And the other context, as you said, is that the Court has sometimes held that intent to defraud subsumes intent to deceive. In those cases, Morales-Alegria and also U.S. v. Milton, the Court has said that intent to defraud means knowledge that your statement is false plus intent to deceive. That's fine. So either of those — Is it construed intent to deceive by itself? Well, my point, Judge, is that this Court's presidents have either made intent to deceive and intent to defraud equivalent, in which case they are redundant. What's the case that does that? U.S. v. Vincent, 758 F. Second, 379. Is that in the brief? No, Your Honor. And U.S. v. Stapleton, 293 F. Third, 1111. Maybe you ought to give us those cites. Is that in the brief? Yes, Your Honor. I could submit a 28J letter with the citations. Your Honor, the main point, though, in answer to your question is that even if intent to deceive is enough to make something an aggravated felony under subsection M, this statute doesn't include an element of intent to deceive either. It includes neither an intent to defraud nor an intent to deceive. Really? That's right. You make all these false statements without intending to deceive anybody? Well, Your Honor, it's clear that Congress didn't mean deceive or deceit in the ordinary sense of the word. Now you're getting into the argument. It's almost the same as fraud, but I look at deceive the way most people would. I make a false statement because I want you to get a false impression. Your Honor. That's deceit. But, Your Honor, as the BIA and other courts have held repeatedly in the crime-involving moral turpitude context, a knowing false statement isn't enough to make something a fraudulent offense that Congress wanted to penalize with removal. I'll give you an example. Let's say you had a statute that said any false statement in any financial document is a crime. This State wants to penalize that. What if I'm vain and I always lie about my age, and so I apply for a loan and then I lie about my age? Is that something that Congress would have wanted to penalize with removal? Is that something a prosecutor would want to prosecute? Well, Your Honor, I think it doesn't matter. This Court has repeatedly said — Well, I think you better introduce a little realism as to what would be prosecuted and come up as a crime. Well — You can imagine almost anything with the criminal statute, but — Well, this Court has — An ounce of common sense is important. Well, Your Honor, I think that I will do that. To actually look at the focus on the elements of the offense at issue here, it is perfectly clear, as the BIA held in Matter of Kinney and as Judge Tashima recognized in the earlier decision before this panel, that a person can make a false statement in order to obtain a line of credit or a credit card. That's a broad argument. I agree with that. I agree with that. That's not the argument I'm making to you. Well, Your Honor, I would contend that it's not — it's — whatever or deceit means in subsection M, this statute does not meet that definition. And that's because an ordinary deceit, any knowing false statement, clearly isn't encompassed within the aggravated felony definition. At the least, Your Honor, in order to qualify, it has to be a knowing false statement with materiality. It has to be a material false statement. And I think the cases from the BIA about the federal false statement offense, 18 U.S.C. 1001, are instructive in that regard because they say that — yes, Judge Callahan. When you finish that, I have another line of questioning. Well, why don't you go ahead. Go ahead, Judge Callahan. Well, in terms of — all right. We've established that if it's an aggravated felony, you're going to have to choose the MITs and all the other peristors to John, correct?  But there's also an alternative holding of the IJ that finds Tijani was convicted of a particularly serious crime, and he's not entitled to any relief from that, that he's been. Do you agree that if we affirm on the IJ's alternate finding that Tijani was convicted of a particularly serious crime, that he's also not entitled to relief? Well, Your Honor, if the court held that Mr. Tijani loses on both grounds of removability and that the IJ's holding as to the particularly serious crime is correct, there still is relief in the form of not removing him under the convention against torture. Well, I think my question is a little bit different. Let's say we didn't find that there was an aggravated felony, and let's say that we didn't find the CMIT, you know, that we brought your arguments up to him, but then the IJ falls back on an alternative argument, a particularly serious crime, and — We can still see you. Okay. I guess I wasn't moving enough. Then we've got, you know, we've got the new decision of the BIA, which I think ran where it said, it talks about a non-aggravated felony can't be a particularly serious crime, and it talks about that you're not limited to the same analysis, the same Taylor analysis, when you're looking at an aggravated felony and the like. So even if you win on those first two arguments, don't you still have to — isn't there another step that you have to go through under the particularly serious crime? Well, if we win on both of the first two arguments, then he's not removable, so you never get to the question of relief. The particularly serious crime determination only goes to relief from removal. But if you lose on those, if you lose on those? In other words, if the Court finds Mr. Tijani was convicted of two crimes involving moral turpitude, but not of an aggravated felony, then he would be removable, and then you would turn to the question of relief. Then the question that — one of the questions that is actually before the Supreme Court in the Ali case is whether a non-aggravated felony conviction can be a particularly serious crime. But, Your Honor, I think that this Court can actually — But the BIA says that it can be, correct? The BIA says that it can be, but that's in conflict with this Court's precedent in, I think, Afridi is the case. So, Your Honor, I — Is that true? I think it is. Arguably, Your Honor, Afridi simply said that in dicta, but this Court has said numerous times in various decisions that for a crime to be particularly serious, it has to be an aggravated felony. That question is before the Supreme Court in the Ali case. However, Your Honor, we've raised three independent and sufficient grounds, independently sufficient grounds, to reverse the IJ's determination that Mr. Tijani committed a particularly serious crime. And one of those grounds, Your Honor — Let me just understand this, though. If we get much to say, I think that it is a particularly serious crime, but you also attack it from the standpoint of just a discretionary call, correct? The ultimate decision about whether a non-aggravated felony is a particularly serious crime is arguably discretionary, although I would say it's not clear from the statute, and I presume the Supreme Court may get into that issue. But whether Mr. Tijani gets withholding of removal is actually nondiscretionary. That is a mandatory form of relief if he meets the requirements for it. And so, Your Honor, in any event, if you're asking about jurisdiction, we've raised solely legal claims with regard to the determination that he committed a particularly serious crime. You have to raise legal claims after us to get to it, don't we? That's right, Your Honor. And actually, NAM, as I said in my response to the government's second 28-J letter, which I'm not sure you have yet, NAM doesn't affect our claims of legal error in that respect. NAM simply says that when you look at the offense in question to see whether it's particularly serious, you can look at more than what you would look at under the modified categorical approach. In other words, you're not limited to those pieces of the record of conviction that you would look at to determine removability. NAM doesn't say that you can look at other convictions that were never charged in the notice to appear and that weren't at issue in the hearing, and that's what the IJ did in this case. I see that I'm almost out of time. I wanted to preserve some time for you. We've taken up so much of your time. I think we ought to give you five more minutes of argument now, and then you can have another five after the government has spoken. Thank you, Judge Noonan. So I think that the main point to return to it is that under California Penal Code Section 532A, there's no intent to defraud. That takes care or intent to deceive, Judge Noonan. That disposes of all the issues in this case. Mr. Tijani simply is not removable. Now, even if the court disagreed with that, it's clear that Mr. Tijani is not convicted of an aggravated felony anyway because the government did not prove loss amount, and it could not prove loss amount under this court's precedence, which hold that where the ---- Let me ask you about that. Let me ask you about that. Because they refer to the judgment in which the $10,000, it's the restitution order, correct? That's right. Access to $10,000. Now, the way that I know that we have what the lead case that you made reference to, but the way that restitution works, he essentially, you know, he pleads guilty. Restitution is going to be ---- Restitution is not decided by a jury under any circumstance. It's what is ordered as a part of a judgment. And Mr. Tijani, if he doesn't agree with that, he would have a right to contest that, the amount of restitution that a judge sets. It's judge set. Mr. Tijani didn't do that, and so what you have is the judgment that shows the restitution was in excess of $10,000. So why is it, why doesn't that satisfy the legal requirements? Because not only Lee, but the Supreme Court in Taylor and Shepard emphasized that the jury has to make the requisite findings. I understand your point, Judge Kelt. He never has to make the requisite findings on restitution. There's no requirement for that. Yes, Judge. And how could you ever ---- Why isn't the $10,000 that he doesn't contest in the hearing tantamount to an admission of the losses in excess of $10,000? Judge, the question isn't what was the restitution amount, but what was the loss amount first. Okay. Right. Well, the simple answer is Judge Kaczynski in his concurrence, and I think in Lee, made exactly the point you're making. Look, where loss amount isn't an element of the offense, why would the jury ever make a finding? And he said that suggests, in fact, that you never get to the modified categorical approach and that an offense that doesn't include loss amount simply doesn't meet the generic elements of the aggravated felony definition. But, Judge Kaczynski said, we're bound by our precedent. We have held, and specifically in the context of loss amount under subsection M, that where the conviction is by jury trial, the jury had to make the finding about loss amount. The other point I would make in response to your question, Judge Callahan, is that when Congress ---- He obviously gave up his right to a jury trial on the charges that he pleaded guilty. What if at the time that he had entered the plea, he also was asked, do you admit that the loss is in excess of $10,000, and that was on as a part of his plea colloquy? Would that be enough? That would be enough, but that's not what happened here. And, Your Honor, I would point out one other thing in response to your question, and that is the California restitution statute includes things in restitution that are not included under the federal definition of loss amount. And Congress couldn't have intended those things to be wrapped up in loss. For example, under the California Penal Code section, I think it's 1202.4, the court can include in restitution amounts for emotional distress of the victim, which is explicitly excluded from federal calculations of loss, also includes interest on any losses accrued by the victim, which also is specifically excluded from the federal definition of loss. And, Your Honor, I want to emphasize that in Shepard and Taylor and in Lee, this Court and the Supreme Court have repeatedly emphasized that the reason we want the jury to make the finding is because when you have these consequences of a conviction, we want to make sure that the standard of proof is met and that the jury made the finding. Now, if someone is convicted by guilty plea, that's a different ballgame, as you noted. But in this case, the California restitution statute says that the sentencing judge can set restitution based on the claim of the victim or any other evidence. There's nothing about the standard of proof for that. There's nothing about the reliability of the evidence. A sentencing judge under the California restitution statute could set restitution even if there's a lot of evidence that contradicts what the victim's fair claim is. That's right, Your Honor, but the basic point I would make again is that the precedent is clear, as Judge Kaczynski noted in Lee. If the convictions by jury trial, the elements of the generic definition of aggravated felony, including loss amount, just have to be found by the jury. That's the bottom line. And the reasons for that, I think, are bolstered by the California restitution statute, which show that whatever amount the sentencing judge set here, you can't use it as a reliable indicator of what the actual loss was as Congress intended that term. Thank you. So I'd like to reserve five minutes for rebuttal. Thank you. May it please the court. My name is Ernesto Molina from the United States Department of Justice, representing Michael MacCasey, Attorney General of the United States in this case. In this case, the court addresses an alien who, since his arrival or his admission in 1985, has committed approximately 16 different offenses against California laws. Generally, these all involve fraud or deceit or lying or some sense of dishonesty. Here an immigration judge found that the alien was removal on two grounds, for committing two crimes involving moral turpitude, for committing an aggravated felony, and denied relief in the relevant forms of withholding and cap protection. Those findings are correct, and this court should affirm those findings. Starting off with. When you say findings, they aren't findings of fact, right? Those are questions of law. Whether or not an aggravated felony is involved. Exactly, Your Honor. On that score, I'll ask you the same question I asked your opponent. Why isn't the BIA's decision in Kennedy entitled to Chevron difference? It's virtually the same statute as we have here. It is, but the problem is, as the board in Kennedy itself said, these Connecticut courts had not read the statute to require fraud as a part of that statute. Here in California, as the government brief points out, California has construed Penal Code 532A, Subsection 1. I don't see the case. Give me your best case on that. Okay, I'm sorry, Your Honor. The best California case for that, Your Honor, is People v. Bryan, 139, Cal App, 547. That's a California Court of Appeals decision dating back to 1934. Now, just real briefly what the substance of that decision was. Was there a person who had been convicted of an offense under 532 and 532A, as well as Penal Code 484? Now, the defendant came to the court and said, look, I can't be convicted of both, of 584, 532, and 532A, because 532A is a particular case involving this type of, involving fraud. Now, what the California court said was, that's exactly correct. 532A is a subset of 532 and 484. Now, that was important because under 484 and 532, a person would be convicted of a felony. Under 532A, it would be a misdemeanor. But because 532A is the more specific case, we generally interpret the specific over the general. And we find that if you're guilty of that type of an offense under 532A, you can't be convicted under the more general statutes of 532 and 484. Therefore, because the California court there said that these crimes were more or less the same, 532 and 532A, with 532A only being a very particular instance of 532, the court should continue to agree, should show deference to the California court in the interpretation of its statute, and find that indeed fraud is involved in this statute. Now, even with regard to that, if the court looks to its own precedence in terms of what constitutes fraud, the court's been very direct as to what constitutes fraud. It's more or less, in the normal sense, it's acquiring another's property by intentional misrepresentation. Well, that's exactly 532A. 532A says a person knowingly makes false statements with the intent that it's going to be relied on in order to get money or credit or some form of property. Well, when you make a false representation, expecting someone else to rely on it, they rely on it to their detriment. That is fraud in the classic sense. Now we come to the question of whether or not this would be an aggravated felony. The simple fact that... The government's strongest argument is found in Ferrera. The Ferrera case decided in 2003, I believe it was, where this court analyzed California Penal Code 1202.4F and found that, yes, when a loss is designated under that particular section, it can be relied on. And mind you, it's not contradicted by anything else in the record. It can be relied on to show the amount of loss. Now, that's slightly different than Lee, where there was a loss amount reported, but the person pled to only one specific count that required that amounted to only $605. There the court said the restitution finding cannot contradict the guilty plea. But we don't have a guilty plea here. We have a jury finding, which means that the order of restitution is standing alone and uncontradicted. And in that context, it's permissible for the attorney general, the immigration judge of the board, to look at that restitution order, or so said the Third Circuit in the Acala case. Well, how do you answer the point that it could include elements beyond the loss? Oh, to the argument that... Well, the statute that's involved here, Section 101A43M of the Immigration Nationality Act, says that there is fraud or deceit resulting in a loss in the amount of X amount of dollars. It doesn't mean that the person had to steal $10,000. It means that what the person did caused a loss to somebody else of $10,000. So quite technically, there's nothing in the statute that would preclude a larger finding. And it needs to... But I think what your counsel or the petitioner's argument is saying that federally, when you look at that restitution, maybe it could include that one of the victims had to go to counseling because of what happened to Mr. Tijani's actions. Or maybe it could include interest or any number of things that we don't know looking at it. I imagine that that would be true, Your Honor, but there's no reason why that wouldn't be a loss. But isn't that contrary to the federal definition of a loss? No, there's no suggestion that it's contrary to the federal definition of what a loss is. I mean, taking the term in its natural course, it's essentially saying, look, if you've taken this fraudulent act and the consequences of it will cause some loss to somebody, you're going to be amenable to that loss. How does this whole line of reasoning square with our recent in-bank decision in Navarro-Lopez, which expressly adopted Judge Kosinski's approach in Lee? Well, could you repeat that last part, Your Honor? I say Navarro-Lopez adopted Judge Kosinski's reasoning in Lee that, you know, nothing that's not required as an element of the conviction can be considered under the modified categorical approach. If that adoption was made in Navarro, I'm unaware of it, Your Honor. I'm not disagreeing with the court or suggesting that the court's misreading the case. I didn't read that in Navarro myself in the looks that I've taken at it. Now, at that point, we get to the question of deference. Well, I mean, Navarro says the modified categorical approach, however, only applies when the particular elements of the crime of conviction are broader than the generic crime. When the crime of conviction is missing an element of the generic crime altogether, we can never find that, quote, a jury was actually required to find all the elements of the crime, citing Lee versus Ashcroft-Kosinski concurring. That's what Navarro-Lopez adopted, and it says, for instance, in that case, even if Navarro-Lopez had admitted to the depraved acts, those admissions could not be used to modify the crime because they were not necessary for the conviction. Certainly, Your Honor. If that were the case, then when it comes to a finding of removability, Navarro-Lopez would more or less, I believe the appropriate word would be eschew the government's argument on that point. But only with regard to removability. And this is where the importance of matter of NAM comes in. That is, even, you know, it's certainly clear that Mr. Tajani will be removable for one crime, or for one offense, the crime involving moral turpitude, at which point we now turn to the question of relief. And when it comes to disproving an aggravated felony, says the Board of Immigration Appeals in the NAM case, the burden switches over to the alien to show that their offense did not involve a crime involving moral turpitude. And so, says the Board in the NAM, they can look to outside sources to find out what was involved in the case. Now, because of that, and in this case there's a restitution order to the effect of $27,000, there is substantial reason to believe that Mr. Tajani had committed an offense that caused $27,000 worth of loss. At that point, he's not met his burden of establishing by clear and convincing evidence that he's not guilty of an aggravated felony. And you say at that point... Well, the particularly serious crime felony is a slightly different analysis, Your Honor. In terms of... That is correct, Your Honor. And when I was saying, when I was about to explain a slightly different analysis, what I mean to say is that there the Board of Immigration Appeals says it doesn't necessarily have to be an aggravated felony, but we'll find out from the Supreme Court relatively soon. So I'll put that aside for the moment. But then the question of whether or not it becomes a particular serious crime is generally a discretionary question. Now, this Court has also held that in terms of looking at the standard that the immigration judge or the Board applies, that may be a legal question this Court can review. But at that point, we're still looking at more or less the Frantescu factors, albeit the Board of Immigration Appeals suggests that it's somewhat modified since the original Frantescu decision. So that's how the analysis becomes different. There, it's actually even more wide open. Because if the crime doesn't have to be an aggravated felony, the Court can look at this person and say, you've caused $27,000 worth of damages through your illegal activities. You know, this constant fraud from 96 to 98 and 99 in 12 counts. That is particularly serious, so said the immigration judge. And because of that, the immigration judge found that, you know, in light of the nature of the offense, you know, form of identity fraud, credit fraud, et cetera, that being a nationwide problem, looking at the person's sentence, realizing this person had been sentenced to nine years, and looking at every other Frantescu factor, finding that it weighed against the person, the immigration judge was allowed, as a matter of discretion, to come to the conclusion that this was, in fact, a particularly serious crime. And that evaluation is what's not subject to review by this Court. Now, does that answer Your Honor's question? Well, so I guess, but you could lose on the aggravated felony analysis, but this Court could affirm the I.J. on the alternate ruling. Is that correct? You're exactly correct, Your Honor. Well, it depends on what the Supreme Court does with this. Well, of course, Your Honor, I want to be up front about that. If the Supreme Court scuttles the Board of Immigration Appeals' opinion, of course, that will have to change everything. Now, in looking at my notes, I see that I've covered the crime-involved moral turpitude grounds, the aggravated felony grounds, and what can be looked at there. We've also looked at the particularly serious crime grounds. I know that counsel covered apparently those same topics, so at this point, I'm not inclined to add anything unless the Court has any questions of counsel. Anything more on Judge Gallian? We've lost her on the screen here, Your Honor. We see ourselves, but not Judge Gallian. Judge Gallian, do you have any more questions? Well, she must be. I think we'd better postpone for a moment. Yes, you have more questions. We can hear you now. We see you now. Am I back? Yes, you're back. Can you hear me? Yes. You have more questions. I lost you for a second. What I lost you was when you said in light of what counsel was arguing, you weren't inclined. Right. I didn't think I should go. I don't think I should go on to other focuses at that point unless the Court has any questions for me. No, I don't have any questions. I don't have any questions. Then may I sum up, Your Honor? Thank you, Mr. Moynihan. Thank you, Your Honor. I think it would be good if you addressed the alternative ground because let's assume we're on that. We're looking at it from the point of view of I approve. He shouldn't be removed. Yes, Your Honor. If the Court holds that Mr. Tijani is removable based on two crimes involving moral turpitude but not an aggravated felony, then we get to the question of relief from removal. We've raised four separate claims of legal error respecting the holding that Mr. Tijani committed a particularly serious crime, and I think we've talked about those already and they're adequately briefed. If the Court rejects all of those claims of legal error, then there still is one issue for the Court, and that's whether Mr. Tijani was entitled to relief under the Convention Against Torture. Our claim about how the immigration judge improperly required corroborating evidence when he found Mr. Tijani was credible would affect that as well. And so if he's ---- I've read what he said, and I think your interpretation is possible, but I read it as saying this man is incredible. Of course, if he had produced some corroboration, I'd think it over again. But he really says I can't believe a word this man says because of his history of lying, and that is a finding of incredibility. Your Honor, I think although you could squeeze out a different meaning, I'd say that was the plain meaning of what the I.J. did. Your Honor, it's unclear exactly what the I.J. was referring to. It's not unclear. Why is it unclear? Well, because he said, Your Honor, I have no reason to disbelieve your testimony. Oh, he doesn't say that. He says many reasons. I can't believe a word you say. But, Your Honor, I think there's nothing in the record to show that the I.J. relied on something that was particular to the testimony. In other words, he said ---- Let me ask you this, though. What about, he basically says, based on everything I know about you, I can't believe a word that comes out of your mouth because you just got this incredible record. But, there also, there's in the record that his claim for asylum is that he's a convert to Christianity and he, therefore, that's why he was persecuted and will be persecuted. There's that troublesome 1989 letter that Mr. Tijani disavows himself from saying, I don't know why that came in, in 1989, about me going to that particular church, because, really, he claims that his conversion was in 1994, presently. And that all relates to the heart of his claim and the reason that he was persecuted and will be persecuted is because of his conversion to Christianity. But, Your Honor, the IJ specifically found that that discrepancy was not material, and rightly so, because that letter went to the question, when did he convert? If the letter, in fact, what the letter said was it was from a pastor saying, Mr. Tijani joined my church in 1989. And Mr. Tijani testified, no, I went to that church a couple times, but I didn't convert until later. I was exploring it. I converted in 92. It could have made no difference, either in the earlier proceeding or in the proceeding we're looking at, whether he converted in 89 or 92. And I've got a footnote. If I didn't give you that, but you went to an adverse credibility and said, it can't be based on speculation and those type of things. Here, he's not speculating that he could have been convicted of all these crimes. He says, look at your record. Look at everything that I see about you. Those are undisputed facts. And he's saying, basically, yeah, I'd like to believe you, but you're going to have to come up with more than someone that doesn't have your record. Why isn't your argument just. Are you still there, Judge? Well, we lost her again. I wonder if I could ask you to think about. Well, our technicians and try to get her back. Think about a question along the same lines. I think this is one of the legal issues facing the panel. If we get there. This is. I was saying to I was saying to Miss Wang that I think one of the issues facing this panel is, is the fact that although, you know, several times the IJ says, well, you know, I don't believe this. I don't believe that. You're hard to believe. Still, he expressly refused to make an adverse credibility finding several times. I've never seen this kind of record where at the same time the IJ says, well, you know, it's hard to believe what you're saying, but I'm not going to make an adverse credibility finding. What are we supposed to make of a record like that? Yeah, I think you point to a good question. And I think that given that record and given the Ninth Circuit's repeated and clear law saying, if there's no adverse credibility finding, then you can't require corroborating evidence that the court should at the least remand. This IJ, as you say, expressly said, I'm not finding you incredible. What he said, Judge Noonan, is if because you have criminal offenses involving dishonesty, which, by the way, were not charged in the notice to appear, because you have those prior convictions, I'm going to require you to present corroborating evidence. He didn't say, I'm finding you incredible because of your criminal record. This Court's precedents make it clear. If there's no adverse credibility finding, then you can't require corroborating evidence. And this record shows that the IJ, as Judge Tashima said, refused to make an adverse credibility finding. He referred to some uncharged convictions that involved alleged dishonesty, but he didn't say, in light of that, I'm finding you incredible. He said, I'm not finding you incredible, but in light of your record, I want you to present corroborating evidence, and that's inconsistent with this Circuit's law. Okay. Sorry, go ahead. Do we have something more? You're, I think, out of time if I'm looking at it. Do you have something more to say? Yes. I wanted to respond quickly to some of the points the Respondent made. First of all, with respect to loss amount, the government cites Ferreira, which, again, is a guilty plea case.  And the Supreme Court's requirements in Shepard and Taylor that were the convictions by jury trial, the jury had to make the finding. And also, Your Honor, I want to give you the authority to back up my point that the California Restitution Statute's definition of loss is inconsistent with the Federal definition. The citation to the Federal law is in the Sentencing Guidelines, Section 2B, 1.1, Application Note 3. And I would compare that to the California Restitution Statute, Cal Penal Code 1202.4F, which includes, among other discrepancies, the issue of including emotional distress and interest. Okay. I want to address also the government's citation of the California case of Bryan. I don't believe the government cited that in their brief, and I don't have complete recall of the case. But based on the government's own representation of what Bryan held, it makes our point for us. The government says that Bryan held that the statute of conviction here, 532A, is a subset of 532. And that's exactly the point I was making. The difference between them is that 532 is essentially 532A plus intent to defraud. That's the distinction that the BIA relied on in Kinney to hold that this statute that we're looking here is not a fraud offense. And finally, just to get back to the question of NAM, I want to just make clear what I said in my response to the government's 28J letter, which we filed yesterday afternoon. And that is that NAM does not affect our claims of legal error here. What the IJ did in this case is exactly what the government did in its argument. It looked at other convictions, alleged convictions, that were never charged in the notice to appear in the removal case and said, based on your entire criminal record, I'm going to hold that you were convicted of a particularly serious offense. That is contrary to the statutory definition of particularly serious offense. It's contrary to what NAM says, too, which is that you look at the offense and determine whether it's particularly serious. You don't look at other facts that have nothing to do with the offense. And, Your Honor, as I said before, whether a crime is particularly serious may or may not be a discretionary determination. It certainly isn't if you're talking about something that is an aggravated felony, whether or not it is discretionary, ultimately. This Court has jurisdiction to decide that question, because we are raising solely claims of legal error. And under the Real ID Act's addition of subsection D, or I should say, you know, Immigration Act 242BA2D, this Court has jurisdiction to consider questions of law. And this Court, specifically in a Freedie, in the context of the particularly serious crime determination, said that the Court can consider whether the I.J. applied the proper legal standard, even if the ultimate decision is discretionary. And finally, even if NAM did affect the analysis of the issues in the case, the BIA didn't rely on that reasoning. Obviously, NAM is a new case, and under the Chenery Doctrine, this Court should not permit the government to rely on it. If the Court has no further questions, I think that's it. Thank you, Ms. Long. Thank you very much. The case is submitted. I want to thank both counsels for very spirited and good arguments, orally and in their briefs. Thank you. Are we going to confer and set the screen in Chambers? Why not? Call my Chambers number. All right. Thank you. All rise. This Court, this session is adjourned.
judges: Noonan, Tashima, Callahan